# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ACTION RENTALS
HOLDINGS, LLC, et al.,

              Plaintiffs,

      v.                                **Case No. 22-CV-777**

WACKER NEUSON
AMERICA CORPORATION,

              Defendant.

## ORDER

On August 12, 2022, plaintiffs Action Rentals Holdings, LLC and Action Rentals, LLC (collectively, "Action Rentals") jointly filed their second amended complaint (hereinafter referred to simply as the complaint) against defendant Wacker Neuson America Corporation ("Wacker Neuson"). The complaint pleads two counts for breach of contract (counts I and V); one count for an equitable accounting (count II); two counts for quantum meruit/unjust enrichment (counts III and VII); one count for fraudulent inducement (count IV); one count for open account (count VI); and one count for account stated (count VIII). (ECF No. 7 at ¶¶ 44-88.)

On September 8, 2022, Wacker Neuson filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Wacker Neuson's motion leaves only Action Rentals' breach of contract claims (counts I and V) unchallenged. The motion is fully briefed and ready for resolution. (ECF Nos. 13, 19, 20.) All parties have consented to the jurisdiction of this court. (ECF Nos. 10, 16.)

1.    **Facts**

The following allegations, which the court accepts as true for purposes of the pending motion, are taken from Action Rentals' complaint and several exhibits attached thereto.

Action Rentals operates a construction equipment rental business in the Southeastern United States, with locations in Florida, Georgia, and Louisiana. (ECF No. 7 at ¶ 13.) Wacker Neuson is a manufacturer of construction equipment and supplies businesses with its equipment throughout North America. (ECF No. 7 at ¶ 14.) The parties entered into a "Distributor Agreement" on June 1, 2017, and several related expansion agreements (collectively, the "Distributor Contract"). (ECF No. 7 at ¶¶ 20-21.) Pursuant to the Distributor Contract, Wacker Neuson appointed Action Rentals as the exclusive authorized distributor of certain Wacker Neuson products in Florida, Georgia, and Louisiana (collectively, the "exclusive territory"). (ECF No. 7 at ¶¶ 20-21.)

Before the parties finalized the Distributor Contract, Wacker Neuson falsely stated to Action Rentals that "it would pay Action Rentals certain fees and reimburse certain

amounts pertaining to product repair work." (ECF No. 7 at ¶¶ 17-19.) Wacker Neuson "made such false statements with the purposeful intention of inducing Action Rentals to rely on them and enter into a distributor agreement" and "had no intention of actually paying any fees or other amounts, or to provide rebates to Action Rentals." (ECF No. 7 at ¶¶ 18-19.)

Under the Distributor Contract Wacker Neuson agreed to pay Action Rentals a four percent "Prep Fee" for all of Wacker Neuson's direct sales into Action Rentals' exclusive territory, pay Action Rentals warranty reimbursements for any required repairs discovered by Action Rentals during its predelivery inspections of directly-sold equipment, and provide Action Rentals quarterly rebates from purchases of certain equipment. (ECF No. 7 at ¶¶ 21(b)-(c).) But when Wacker Neuson made direct sales into Action Rentals' exclusive territory, it did not pay the agreed-upon fees and warranty reimbursements. (ECF No. 7 at ¶¶ 22-29.)

Sometime in 2021 Action Rentals was finalizing a sale of "substantially all of its assets" to another construction equipment rental company, Sunbelt Rentals. (ECF No. 7-4, Ex. D at 1.) In anticipation of that sale it asked Wacker Neuson for a statement of Action Rentals' debts, liabilities, and obligations. (ECF No. 7-4, Ex. D at 1.) In a letter dated October 18, 2021 (the "Payoff Letter"), Wacker Neuson confirmed for Action Rentals its debts, liabilities, and obligations as of October 25, 2021, which Wacker Neuson calculated and quoted in the letter to be $29,208,313.71. (ECF No. 7-4, Ex. D at 6.) The letter also

3

terminated the Distributor Contract, effective October 25, 2021—the anticipated date of Action Rentals' sale to Sunbelt Rentals—and included a "Release Clause," which ostensibly released Wacker Neuson from "all past and ongoing debts, liabilities and obligations … to Action Rentals … (including all fees owed under the Distributor Contract)." (ECF Nos. 7 at ¶ 31; 7-4, Ex. D at 1.) Pursuant to the Payoff Letter, Action Rentals paid Wacker Neuson the quoted payoff amount of $29,208,313.71. (ECF No. 7 at ¶ 32.) At the bottom of the Payoff Letter was a signature line for Action Rentals to acknowledge its agreement to the letter's terms. (ECF No. 7-4, Ex. D at 4.)

On December 30, 2021, Action Rentals sent a letter (the "Demand Letter") to Wacker Neuson demanding that Wacker Neuson within fifteen days of its receipt of the letter account for all of Wacker Neuson's direct sales into Action Rentals' exclusive territory. (ECF No. 7 at ¶ 30.) Wacker Neuson responded by letter on January 7, 2022, pointing to certain terms of the Payoff Letter that released Wacker Neuson from such claims. (ECF Nos. 7 at ¶ 31; 7-4, Ex. D at 1.)

In reply to Wacker Neuson's January 7, 2022, letter, Action Rentals informed Wacker Neuson on January 20, 2022, that it never counter-executed the Payoff Letter and, thus, "never agreed to release or discharge Wacker Neuson from its debts, liabilities and obligations pursuant to its contracts with Action [Rentals]." (ECF No. 7-3, Ex. C at 2.) Action Rentals attached the Payoff Letter displaying the blank counter-execution signature line. (ECF No. 7-3, Ex. C at 6.) Action Rentals claims that Wacker Neuson still

owes it the Prep Fees and warranty reimbursements associated with Wacker Neuson's direct sales into Action Rentals' exclusive territory between June 1, 2017, and October 25, 2022. (ECF No. 7 at ¶¶ 22-29.)

In a separate matter, Action Rentals rented to a customer a Wacker Neuson machine which caught fire while in the customer's possession. (ECF No. 7 at ¶ 41.) Wacker Neuson agreed that Action Rentals would provide the customer with a replacement machine and that Wacker Neuson would cover the customer's monthly rental fees (the "Machine Fire Rental Charges Agreement"). (ECF No. 7 at ¶ 42.) Action Rentals submitted three invoices to Wacker Neuson for the rental charges, one of which Wacker Neuson paid. (ECF No. 7 at ¶ 43.) However, Wacker Neuson never paid the remaining two invoices, which together total $16,630.75. (ECF No. 7 at ¶ 43.)

## 2. Fed. R. Civ. P. 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-

56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

## 3. Analysis

### 3.1. Equitable Accounting (Count II)

Wacker Neuson argues that Action Rentals' equitable accounting claim should be dismissed. Both parties analyze the claim under Wisconsin law. (ECF Nos. 13 at 8-9; 19 at 5-7.)

"Accounting is a claim in equity available when a plaintiff needs to compel an accounting of his money or property held by a defendant." *RxUSA, Inc. v. Capital Returns, Inc.*, No. 06-C-790, 2007 WL 2712958, at *12 (E.D. Wis. Sept. 14, 2007) (citing *Antigo Superior Nursing Home, Inc. v. First Fed. Sav. & Loan Ass'n*, 51 Wis. 2d 196, 201–02, 186 N.W.2d 265 (Wis. 1971)). "[C]ourts have most often concluded that an accounting is an appropriate remedy when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount." *Felton v. Teel Plastics, Inc.*, 724 F. Supp. 2d 941, 949 (W.D. Wis. 2010). The plaintiff has the burden to show its right to an accounting, *Felton*, 724 F. Supp. 2d at 949 (internal citation omitted), which requires demonstrating "a complete inadequacy of legal remedies and a special ground to invoke equity jurisdiction," *RxUSA, Inc.*, 2007 WL 2712958, at *12 (citing *Walter Diehnelt, Inc. v. Root*, 183 Wis. 535, 198 N.W. 388, 389 (Wis. 1924)).

Action Rentals argues that it is "not in a position to determine the amount of damages [it has] suffered without a proper accounting." (ECF No. 19 at 6.) Wacker Neuson counters that Action Rentals' claim for breach of the Distributor Contract will proceed to discovery during which Action Rentals can seek the information it needs to prove its damages. Therefore, it has an "adequate legal remedy" and lacks the "special grounds" necessary for an equitable accounting. (ECF No. 13 at 9.)

Wisconsin law places the burden on the party seeking an equitable accounting to demonstrate that an accounting is the only adequate means available for determining what it is owed. *See Walter Diehnelt, Inc. v. Root*, 183 Wis. 535, 198 N.W. 388, 389 (Wis. 1924). Thus, the party seeking an equitable accounting must plead "a complete inadequacy of legal remedies and a special ground to invoke equity jurisdiction" that rises above a speculative level. *See Lang v. Tharpe*, No. 18-cv-1077, 2022 WL 1597421, at *24 (E.D. Wis. May 19, 2022).

The complaint does not allege a complete inadequacy of legal remedies. At most it alleges that "it is not clear" that legal remedies are adequate. (ECF No. 7 at ¶ 53.) At the same time, Action Rentals alleges in its breach of contract claim that, as a "result of Wacker Neuson's failure and refusal to fulfill its obligations pursuant to the Distributor Contract, Action Rentals has suffered damages." (ECF No. 7 at ¶ 48.) In other words, the complaint suggests that Action Rentals has an adequate legal remedy—a claim for breach of contract. The breach of contract claim will proceed to discovery, where Action Rentals

can seek the information necessary to prove its purported damages stemming from Wacker Neuson's alleged breach of the Distributor Contract, which is the same information it seeks in its equitable accounting claim.

Action Rentals claims its complaint "adequately explain[s] why [it] cannot determine[] … through discovery[] the amount [it] [is] owed." (ECF No. 19 at 6.) To support this contention, however, Action Rentals cites to explanations of why, *at present*, it cannot determine what it is owed—not explanations for why it will not be able to determine what it is owed through discovery. (ECF No. 19 at 6-7 (citing ECF No. 7 at ¶¶ 17, 20, 30, 31, 35, 36, 38, 51).) For example, Action Rentals emphasizes the allegation that "Wacker Neuson has never provided the requested direct sales and warranty claim information and has never committed to complying with its obligation … under the Distributor Contract." (ECF No. 19 at 6.) But this allegation only alleges that Wacker Neuson has not *yet* provided it with the information it seeks in an accounting—the allegation does not allege that discovery pursuant to its breach of contract claim will not be sufficient for uncovering that information.

Action Rentals also argues that it would be premature to dismiss its accounting claim because "it is not certain at this time" whether its breach of contract claim will be "an adequate remedy at law," and it points out that its complaint alleges this. (ECF No. 19 at 7 (citing ECF No. 7 at ¶ 53).) But Action Rentals' allegation that "it is not clear that [its] remedies at law … are as full, adequate and expeditious as they are in equity" (ECF

No. 7 at ¶ 53) is—even on a motion to dismiss—too speculative to satisfy Action Rentals'
burden of demonstrating a "complete inadequacy of legal remedies." Moreover, the issue
is not whether the legal remedy will ultimately be successful (that is, that Action Rentals
will prevail on its breach of contract claim), but whether the legal remedy provides the
party with an adequate means of obtaining the information it seeks to obtain in an
accounting.

This court has explained that "[t]he need for a party to pursue an equitable
accounting claim is generally unnecessary in light of modern discovery rules," *Didion
Mining, Inc. v. Agro Distrib., LLC*, No. 05-C-227, 2007 WL 702808, at *11 (E.D. Wis. Mar. 2,
2007), and has found that the failure to explain why discovery pursuant to a separate
breach of contract claim would be inadequate as a reason for dismissing an accounting
claim at the motion to dismiss stage, *see Lang*, 2022 WL 1597421, at *24. Action Rentals
fails to allege that discovery pursuant to its to its breach of contract claim is an inadequate
legal remedy. Therefore, the court will dismiss the equitable accounting claim (count II).

### 3.2. Fraudulent Inducement Claim (Count IV)

Wacker Neuson argues that Action Rentals' fraudulent inducement claim—which
both parties analyze under Florida law (ECF No. 13 at 11-12; 19 at 14-17)—fails because
the claim is barred by Florida's independent tort doctrine. Under Florida's independent
tort doctrine, "where a party is in contractual privity with another, to bring a valid tort
claim, the party must establish that the tort is independent of any breach of contract."

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 16-cv-186, 2018 WL 905752, at *10 (M.D. Fla. Feb. 15, 2018) (citing *Freeman v. Sharpe Res. Corp.*, No. 12-cv-1584, 2013 WL 2151723, at *7 (M.D. Fla. May 16, 2013) (internal citations omitted)). "Although fraudulent inducement can qualify as an independent tort, 'the critical inquiry focuses on whether the alleged fraud is separate from the performance of [a] contract.'" *Certified Collectibles Grp., LLC v. Globant, LLC*, No. 19-cv-1962, 2021 WL 1214963, at *4 (M.D. Fla. Mar. 31, 2021) (quoting *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. 2014)). "An alleged fraud is not separate from the performance of the contract [if] the misrepresentations forming the basis for the fraud also form the basis for the breach of contract claim." *Id.* (quoting *Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.*, No. 13-80385-Civ, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016) (internal citation omitted); citing *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000)); *see also Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. Dist. Ct. App. 1997) ("[W]here the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the [independent tort doctrine] applies and the parties are limited to pursuing their rights in contract.").

Wacker Neuson argues that the false statements underlying Action Rentals' fraud claim were subsequently memorialized as the terms that trigger its breach of contract claim. (ECF No. 13 at 12.) As such, the fraud claim is inseparable from the breach of contract claim and is barred by the independent tort doctrine.

Action Rentals counters that the false statements underlying the fraud claim preceded the parties' execution of the Distributor Contract and, necessarily, Wacker Neuson's breaches of that contract. (ECF No. 19 at 15-16.) Therefore, its fraud claim and its breach of contract claim are based on separate and distinct acts and its fraud claim is an independent tort.

Action Rentals' fraud claim alleges that Wacker Neuson knowingly made false statements to Action Rentals with the intention of inducing Action Rentals into entering into the Distributor Contract. (ECF No. 7 at ¶¶ 17-19, 61-64.) The complaint describes Wacker Neuson's false statements as promises that it "would pay Action Rentals certain fees and reimburse certain amounts pertaining to product repair work, and that Action Rentals would be entitled to certain rebates on its purchases of Wacker Neuson products." (ECF No. 7 at ¶¶ 17, 61.)

While Wacker Neuson's initial promises may have been fraudulent, the promises were subsequently memorialized as terms in the Distributor Contract:

> b) Wacker Neuson agreed to pay Actions Rentals a fee of 4% of the invoiced amount for all direct sales by Wacker Neuson of new machines classified as CE Products to the identified types of purchasers located in the Areas of Responsibility noted on the Distributor Agreement (the "Prep Fee")…. Also, Actions Rentals was entitled to reimbursement under Wacker Neuson's warranty policy for any repairs required of the machines as a result of defects discovered during Action Rentals' pre-delivery inspections….
>
> c) Wacker Neuson agreed that Action Rentals would be eligible to receive certain quarterly rebates from purchases of new CE Products excluding parts.

(ECF No. 7 at ¶¶ 21(b)-(c).) Action Rentals' breach of contract claim alleges Wacker Neuson's failed to abide by these terms. (ECF No. 7 at ¶¶ 23-28, 47.) Specifically, Action Rentals alleges that Wacker Neuson "repeatedly sold its products bypassing Action Rentals so that Wacker Neuson could avoid paying Action Rentals the fees to which Action Rentals was entitled under the Distributor Contract" (ECF No. 7 at ¶ 25); "prevented Action Rentals from providing warranty and repair work … [and] denied over fifty … warranty claims without a valid ground" (ECF No. 7 at ¶ 26); "fail[ed] to pay Action Rentals the [4% Prep Fee] when due" (ECF No. 7 at ¶ 27); and "usurp[ed] Action Rentals' opportunity to be reimbursed under Wacker Neuson's warranty policy for work that would have been performed on equipment improperly sold in Action Rentals' territories" (ECF No. 7 at ¶ 28).

The false statements underlying Action Rentals' fraudulent inducement claim and the Distributor Contract terms underlying Action Rentals' breach of contract claim concern Wacker Neuson's seemingly identical promises of certain fee payments, warranties, and rebates. Wacker Neuson's failure to make good on its fraudulent promises would also result in breach of the contract terms which embody those promises. As such, Action Rentals' fraudulent inducement claim is inseparable from its breach of contract claim and is barred by the independent tort doctrine. *See Hotels of Key Largo, Inc.,* 694 So. 2d at 77 ("[W]here the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement[, the independent tort doctrine bars a

claim for fraudulent inducement.]"); *Kaye*, 2014 WL 2215770, at *5 (finding that plaintiff's "claims of fraud [were] precisely the same as a potential breach-of-contract claim … [because] [t]he alleged fraudulent representation … [was] a right specifically embodied in the [parties'] Agreement").

The fact that Wacker Neuson's false statements preceded the Distributor Contract—and the acts constituting breach of that contract—does not mean Action Rentals' fraudulent inducement claim is an independent tort. For purposes of the independent tort doctrine, the timing of the misrepresentations is not dispositive; the question is whether the misrepresentations also serve as the basis for the breach of contract claim. *Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc.*, No. 16-80722-CIV, 2017 WL 747555, at *10 (S.D. Fla. Feb. 27, 2017) ("Regardless of when the alleged misrepresentations were made, the question that must be answered is whether the representations at issue concern the heart of the parties' agreement." (citations omitted)); *see also Certified Collectibles Grp., LLC*, 2021 WL 1214963, at *4.

False statements that induce a party to enter a contract will always precede the formation of the contract. If timing was dispositive, as Action Rentals suggests, the independent tort doctrine would never bar a fraudulent inducement claim. But Florida's independent tort doctrine bars fraudulent inducement claims where, as here, the misrepresentations are inseparably embodied in the parties' subsequent agreement. *See, e.g., Inspirations Nev. LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268, 2021 WL 2156677, at *7

(S.D. Fla. May 26, 2021) (quoting *Hotels of Key Largo, Inc.*, 694 So. 2d at 77); *Kaye*, 2014 WL 2215770, at *5; *Partshawk, LLC v. Tribridge Holdings, LLC*, No. 19-cv-353, 2019 WL 12517005, at *6 (M.D. Fla. Nov. 5, 2019); *Circuitronix, LLC v. Shenzen Kinwong Elec. Co., Ltd.*, No. 17-cv-22462, 2018 WL 7287192, at *12 (S.D. Fla. Jan. 31, 2018).

In sum, the false statements giving rise to the fraudulent inducement claim (count IV) are inseparably embodied as the contractual terms underlying the breach of contract claim (count I). Thus, Action Rentals' fraudulent inducement claim is barred by the independent tort doctrine and the court will grant Wacker Neuson's motion to dismiss count IV of the complaint. Because dismissal of the fraudulent inducement claim is warranted under the independent tort doctrine, the court need not address Wacker Neuson's alternative argument for dismissal pursuant to Fed R. Civ. P. 9(b).

### 3.3. Quantum Meruit/Unjust Enrichment (Counts III & VII)

Wacker Neuson also moves to dismiss Action Rentals' quasi-contract causes of action for "Quantum Meruit/Unjust Enrichment." Under Wisconsin law—which both parties apply to the unjust enrichment/quantum meruit claims—unjust enrichment and quantum meruit are distinct causes of action, "with distinct elements and a distinct measure of damages." *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331, 333-34 (Wis. 1992). Nonetheless, Action Rentals pleads unjust enrichment and quantum meruit together in causes of action associated with the Distributor Contract (count III) and the Machine Fire Rental Charges Agreement (count VII). (ECF No. 7 at ¶¶ 54-59, 76-81.)

Wacker Neuson notes that the unjust enrichment/quantum meruit counts merge distinct claims into single causes of action but asserts that "the distinction is moot as both claims are quasi-contract claims barred by the allegation of valid contracts." (ECF No. 13 at 9 n.3.) Because unjust enrichment and quantum meruit "can be invoked *only in the absence of an enforceable contract*," *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) (emphasis added), Action Rentals' unjust enrichment and quantum meruit claims are foreclosed by its breach of contract claims (ECF No. 13 at 9-10 (citing ECF No. 7 at ¶¶ 42, 45)).

Action Rentals acknowledges that its breach of contract claims and unjust enrichment/quantum meruit claims are mutually exclusive, and that it cannot recover under both theories. (ECF No. 19 at 9.) But it argues that the Federal Rules of Civil Procedure allow it to plead alternative—though inconsistent—theories of relief. (ECF No. 19 at 9.) Further, because its fraudulent inducement claim raises the issue of the contracts' validity, it should be allowed to proceed with the unjust enrichment and quantum meruit claims. (ECF No. 19 at 10-11.)

A plaintiff may plead alternative, though inconsistent, theories of relief, *see* Fed. R. Civ. P. 8(e)(2), including—as Action Rentals does here—"an express or implied contract theory and … a quasi-contract or unjust enrichment theory," *U.S. ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 859 (E.D. Wis. 2011) ("[W]hile a plaintiff cannot recover simultaneously on both a contract and an unjust enrichment theory, such theories

can be plead in the alternative."). However, because quasi-contract theories of relief "can be invoked only in the absence of an enforceable contract," *Carroll*, 658 F.3d at 682, this court has limited a plaintiff's ability to simultaneously plead incompatible quasi-contract and contract causes of action:

> Where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim.

*U.S. ex rel. Roach Concrete, Inc.*, 787 F. Supp. 2d at 859. This limitation "is but an application of the rule that '[a] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" *Id.* (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal citation omitted)).

Action Rentals does not allege any facts to support an inference that the Breach of Machine Fire Rental Charges Agreement might be invalid or unenforceable. To the contrary, Action Rentals incorporates into its quantum meruit/unjust enrichment claim allegations that that agreement is in fact valid and enforceable. (ECF No. 7 at ¶¶ 42-43, 77). Therefore, the court will dismiss Action Rentals' quantum meruit/unjust enrichment claim (count VII) plead in the alternative to the claim for breach of the Machine Fire Rental Charges Agreement.

Action Rentals' fraudulent inducement claim did supply a basis on which to find that the Distributor Contract might have been invalid or unenforceable. But that claim has been dismissed as barred by the independent tort doctrine. With the allegations

supporting that claim (ECF No. 7 at ¶¶ 17-19, 60-64) removed from consideration, there is no basis on which to infer that the Distributor Contract is invalid or unenforceable. And the complaint is full of assertions that the contract is valid and enforceable (ECF No. 7 at ¶¶ 20-40), all of which Action Rentals incorporates into the count for quantum meruit/unjust enrichment associated with the Distributor Contract (ECF No. 7 at ¶ 55). As such, the court will also dismiss the quantum meruit/unjust enrichment claim (count III) plead in the alternative to the claim for breach of the Distributor Contract.

### 3.4. Open Account Claim (Count VI)

As an alternative to its claim for breach of the Machine Fire Rental Charges Agreement, Action Rentals alleges a claim for "open account" against Wacker Neuson. (ECF No. 7 at ¶¶ 69-75.) Both parties analyze Action Rentals' open account claim under Wisconsin law. (ECF Nos. 13 at 10; 19 at 11-13.)

Wacker Neuson argues that Action Rentals' open account claim fails because Wisconsin law requires that an open account reflect *mutual* obligations of the parties, and Action Rentals' open account claim is premised upon allegations of a unilateral account wherein Action Rentals is the sole creditor and Wacker Neuson is the sole debtor. (ECF No. 13 at 10.) Action Rentals argues in response that "mutuality is not a required element of an open account claim" and its allegations of a unilateral account are sufficient. (ECF No. 19 at 11-13.)

While this court could find only scant guidance, it appears that Wisconsin law treats "open account" and "*mutual* and open account" theories of recovery as synonymous. *See* 12 Wis. Prac. Series, Collection Law § 1:74 *Open account* (2d ed. Aug. 2022 update) (using "open account" interchangeably with "mutual and open account"). Although "open account" and "mutual and open account" are distinct concepts with distinct elements, *see* 1 Am. Jur. 2d *Accounts and Accounting* § 5 (1962) ("A mutual open account is an open account where there are items debited and credited on both sides of the account rather than simply a series of transactions always resulting in a debit to one party and a credit to the other party." (internal citations omitted)), and some states distinguish between the two, *see, e.g., Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 409, 415, 871 P.2d 826, 832 (Idaho 1993) (relying on Am. Jur. 2d to distinguish an "open account" from a "mutual open account"); *Robert W. Gottfried, Inc. v. Cole*, 454 So. 2d 695, 696 (Fla. Dist. Ct. App. 1984) (defining an open account), it appears that Wisconsin only recognizes claims for mutual and open account.

In Wisconsin, a mutual and open account requires an

express or implied agreement by the parties concern[ing] a connected series of debit and credit entries of reciprocal charges and allowances, where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made thereto, until it shall suit the convenience of either party to settle and close the account[.]

*Estate of Vicen*, 1 Wis. 2d 193, 197-198, 83 N.W.2d 664, 667 (Wis. 1957). And, at least in Wisconsin, a mutual and open account requires mutuality in that both parties simultaneously are the debtor and creditor. *See id*. ("Since in the matter at bar the account was merely one that involved charges for professional services for which money payments were made from time to time, and did not involve a situation where each party had an account against the other, we are obliged to determine that a mutual and open account did not exist as between them.").

Action Rentals' open account claim is based on allegations that, under the parties' Machine Fire Rental Charges Agreement, only it was the creditor and only Wacker Neuson was the debtor. (ECF Nos. 19 at 12-13; 7 at ¶¶ 41-43, 69-75.) Because Action Rentals' open account claim is based on a unilateral account, this court will dismiss the claim (count VI).

### 3.5. Account Stated Claim (Count VIII)

Wacker Neuson also argues that Action Rentals' account stated claim—which, as with the open account claim, Action Rentals pleads in the alternative to the claim for breach of the Machine Fire Rental Charges Agreement (ECF No. 7 at ¶ 82)—should be dismissed because Action Rentals fails to allege certain essential elements.

Both parties analyze the account stated claim under Wisconsin law. (ECF Nos. 13 at 10-11; 19 at 13-14.) In Wisconsin, an account stated claim has four elements: (1) "one party holds an account against another"; (2) "a statement of the account is made showing

19

the amount due"; (3) "the statement is admitted by the other party to be correct"; and (4) "there is a promise, either actual or implied, to pay the same." *Onalaska Elec. Heating, Inc. v. Schaller*, 94 Wis. 2d 493, 501-02, 288 N.W.2d 829, 833 (1980) (citing *Estate of Vicen*, 1 Wis. 2d at 199, 83 N.W.2d at 667).

Wacker Neuson argues that Action Rentals fails to allege the third and fourth elements of an account stated claim. Specifically, it contends that the complaint is devoid of allegations that it admitted to owing (the third element) and promised to pay (the fourth element) the sums Action Rentals quoted in the two unpaid invoices relating to the Machine Fire Rental Charges Agreement. Action Rentals argues in response that Wacker Neuson impliedly acquiesced to the correctness of the sums by retaining the invoices and not disputing the sums within a reasonable time, which facts the complaint alleges. (ECF No. 7 at ¶¶ 85-86.) And Wacker Neuson impliedly promised to pay the amounts quoted in the two unpaid invoices by submitting payment on one of the three invoices, which fact the complaint also alleges. (ECF No. 7 at ¶ 43 ("One of the three invoices was paid by Wacker Neuson ….").)

"In an action on an account stated the retention of a statement of an account by a party without making an objection thereto within a reasonable time is evidence of acquiescence in or assent to the correctness of the account." *Schaller*, 288 N.W.2d at 834 (internal citations omitted). Moreover, "[a]ny evidence indicating an admission by the debtor to the creditor of the stated indebtedness claimed by the [creditor] will furnish

ground for an implied promise." *Id.* (quoting 15 Williston on Contracts § 1863 (3d ed. 1979)).

Action Rentals alleges that it provided Wacker Neuson with three invoices for charges relating to the parties' Machine Fire Rental Charges Agreement, one of which Wacker Neuson paid. (ECF No. 7 at ¶¶ 43, 86.) The two unpaid invoices—which Action Rentals submitted with its complaint as Exhibits F and H (ECF No. 7-6)—are dated November 11, 2020, and December 9, 2020, respectively, and total $16,630.75 (ECF No. 7-6 at 1-2). There is no allegation that Wacker Neuson expressly refused to pay the two unpaid invoices, only that Wacker Neuson "failed" to pay them, despite Action Rentals' repeated attempts to collect payment. (ECF No. 7 at ¶¶ 43, 87.) And, according to the complaint, Wacker Neuson submitted payment on one of the three invoices. (ECF No. 7 at ¶ 43.)

Drawing all reasonable inferences in Action Rentals' favor, these allegations are sufficient to give rise to an implied promise to pay, and an acquiescence to, the amounts shown on the two unpaid invoices. Wacker Neuson has possessed the two invoices since December 2020 and has not disputed the amounts shown. Therefore, the court will deny Wacker Neuson's motion to dismiss Action Rentals' account stated claim (count VIII).

### 3.6. Leave to Amend

Action Rentals requests leave to file an amended complaint curing any defects noted in the court's decision. (ECF No. 19 at 19.) However, it does not explain how it

might cure any defects through amendment. Moreover, it appears that any amendment would prove futile. As such, the court will deny Action Rentals' request for leave to file an amended complaint.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for failure to state a claim (ECF No. 12) is **GRANTED IN PART** and **DENIED IN PART**. It is granted with respect to the plaintiffs' equitable accounting claim (count II), quantum meruit/unjust enrichment claims (counts III and VII), open account claim (count VI), and fraudulent inducement claim (count IV). It is denied with respect to the plaintiffs' account stated claim (count VIII). The plaintiffs' equitable accounting claim, quantum meruit/unjust enrichment claims, open account claim, and fraudulent inducement claim are dismissed without prejudice.

Dated at Milwaukee, Wisconsin this 11th day of January, 2023.

WILLIAM E. DUFFIN
U.S. Magistrate Judge