UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ACTION RENTALS
HOLDINGS, LLC, et al.,

            **Plaintiffs/Counter-Defendants,**

    v.                              Case No. 22-CV-777

WACKER NEUSON
AMERICA CORPORATION,

            **Defendant/Counter-Plaintiff/Third-Party Plaintiff,**

    v.

BRUNO E. RAMOS,

           **Third-Party Defendant.**

# ORDER

On February 8, 2023, Wacker Neuson America Corporation ("Wacker") filed an answer to the complaint filed by Action Rentals Holdings, LLC and Action Rentals, LLC (collectively referred to as "Action Rentals"), in addition to filing three counterclaims against Action Rentals and a third-party complaint against Bruno E. Ramos ("Ramos"). (ECF Nos. 24, 25.) The counterclaims and third-party complaint plead one count of

unjust enrichment against Action Rentals (count I), two counts of breach of contract against Action Rentals (counts II and III), and one count of breach of guaranty against Ramos (count IV). (ECF No. 24 at ¶¶ 49-69.) Action Rentals and Ramos filed a motion to dismiss the counterclaims and third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 28.) The motion is fully briefed and ready for resolution. (ECF Nos. 28, 40, 41.) All parties have consented to the jurisdiction of this court. (ECF Nos. 16, 42.)

1. **Background**

The following allegations are taken from Wacker's counterclaims and third-party complaint (ECF Nos. 24, 25)[1]. The court accepts Wacker's allegations as true for purposes of deciding the motion to dismiss.

In June of 2017 Wacker and Action Rentals entered into an agreement (the "Distributor Agreement") pursuant to which Action Rentals became a distributor of Wacker products in parts of Florida, Georgia, and Louisiana. (ECF No. 24 at ¶¶ 17-18.) From 2017 through 2020 Wacker lent funds to Action Rentals to finance purchases of Wacker equipment for its rental fleet pursuant to various Equipment Finance Agreements executed by Action Rentals and Wacker. (*Id.* at ¶ 20.) Ramos personally guaranteed Action Rentals' performance under the Equipment Finance Agreements, agreeing to pay all costs and expenses incurred by Wacker related to the guarantees and the Equipment Finance Agreements. (*Id.* at ¶ 21.)

---

[1] For purposes of brevity, the court cites only to the counterclaims (ECF No. 24) since the document is the same as the third-party complaint (ECF No. 25) except for a footnote (*see Id.* at 21 fn. 1).

From 2017 to 2020, pursuant to Distributor Expansion Program Agreements, Wacker also provided "prebates" to Action Rentals in which Wacker advanced cash to Action Rentals, LLC and was paid back by providing reduced discounts to Action Rentals on certain Wacker products compared to discounts given to other distributors. (ECF No. 24 at ¶ 22.) Additionally, Action Rentals submitted purchase orders for purchases of Wacker products throughout its distributorship, which Wacker accepted. (*Id.* at ¶ 24.) Ramos separately agreed to guarantee the payment of Action Rentals' obligations to Wacker in consideration for extensions of credit by Wacker to Action Rentals under Individual Credit Guaranties. (*Id.* at ¶ 25.)

Pursuant to the Distributor Agreement Action Rentals also agreed to provide warranty and repair work for Wacker products in accordance with Wacker's warranty and service policies, which required that all parts for warranty repairs be purchased from Wacker unless advised otherwise in writing. (ECF No. 24 at ¶¶ 19, 26-27.) When submitting warranty claims, Action Rentals was required to submit a list of the Wacker parts that were used. (*Id.* at ¶ 28.)

In November of 2019 Wacker noted that Action Rentals had submitted an unusually high number of warranty claims related to alternators, and, upon investigation, discovered that Action Rentals had not purchased any alternators from Wacker in 2019. (ECF No. 24 at ¶¶ 29-30.) When Wacker confronted Action Rentals, Ramos acknowledged that Action Rentals could be purchasing cheaper alternators from

a third-party aftermarket supplier, which was later confirmed. (*Id.* at ¶¶ 31-32.) Yet, when submitting warranty claims for the alternators, Action Rentals represented that it had used Wacker parts. (*Id.* at ¶ 34.) Because the third-party alternators were cheaper than Wacker's alternators, Action Rentals retained the difference between the purchase price of the third-party alternator and the Wacker reimbursement amount each time an alternator warranty claim was accepted. (*Id.* at ¶¶ 36-37.)

In March of 2020 Action Rentals submitted multiple purchase orders for Wacker TH627 telehandlers, ordering a total of 50 telehandlers with custom modifications. (ECF No. 24 at ¶ 38.) Although Wacker accepted the orders and manufactured the telehandlers, Action Rentals refused to accept delivery or pay for them. (*Id.* at ¶¶ 39-40.)

By September of 2021 Action Rentals had defaulted on the Equipment Finance Agreements by failing to timely repay funds it borrowed from Wacker, leading Wacker to send a Notice of Default and Reservation of Rights, informing Action Rentals and Ramos that the amount due to Wacker under the agreements was immediately due and payable. (ECF No. 24 at ¶ 41.) The next month Action Rentals informed Wacker that Sunbelt Rentals had agreed to purchase the assets of Action Rentals, LLC and Action Rentals Holdings, LLC, and Action Rentals asked Wacker to prepare a payoff letter detailing the amount of Action Rentals' debts, liabilities, and obligations to Wacker as of October 25, 2021. (*Id.* at ¶ 42.) Wacker provided the payoff letter on October 18, 2021. (*Id.*) As of October 25, 2021, Action Rentals owed Wacker $29,500,233.86, but Wacker

applied a one-percent discount to Action Rentals' obligations in satisfaction of any obligations owed by Wacker to Action Rentals. (*Id.* at ¶¶ 43-44.) Wacker agreed to discount $291,920.15 from the sum Action Rentals owed Wacker, resulting in a payoff amount of $29,208,313.71, which Action Rentals paid on October 25, 2021. (*Id.* at ¶¶ 45-47.)

Neither Action Rentals nor Ramos has paid Wacker the $291,920.15 difference between what Action Rentals owed and the discounted total Wacker offered in consideration for Action Rentals' release of amounts Wacker owed to Action Rentals. (ECF No. 24 at ¶ 48.)

### 2. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[ ]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 3. Analysis

#### 3.1. Consideration of Materials Attached to the Motion to Dismiss

In arguing for dismissal of Wacker's breach of contract claim (count II), Action Rentals attaches various emails for the court to consider pertaining to alleged problems with the telehandlers. (*See* ECF No. 28-2.) It also attaches various UCC-3 termination statements filed by Wacker (ECF No. 28-1), arguing that all four of Wacker's claims must be dismissed because the UCC-3 filings terminated Action Rentals' security interests and released Action Rentals and Ramos from all alleged obligations owed to Wacker under the various agreements governing their relationship. (ECF No. 28 at 9, 15-16.) Each UCC-3 statement identifies Wacker as the secured party and Action Rentals as the debtor, identifies a corresponding UCC financing statement and states that such financing statement is terminated with respect to the security interests of the secured party. *(See* ECF No. 28-1.)

Ordinarily, when a motion to dismiss pursuant to Rule 12(b)(6) relies on matters outside the pleadings, the court must treat the motion as one for summary judgment under Rule 56 and give the parties a reasonable opportunity to present material that is pertinent to the motion. Fed. R. Civ. P. 12(d). It is well-established, however, that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v.*

*Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) ("In evaluating the sufficiency of the complaint, we consider documents integral to the complaint that might aid in determining whether a plaintiff is entitled to relief.").

Action Rentals argues that the court can consider the emails related to the telehandler purchases because they are integral to Wacker's breach of contract claim. (ECF No. 28 at 11 fn. 3.) But as Wacker points out in its response, at best the attachments create factual issues relating to Wacker's breach of contract claim (count II). (*See* ECF No. 40 at 14-15.) They are not "central" to Wacker's claims such that their consideration is appropriate on a motion to dismiss. As such, the court will not consider them.

Action Rentals also argues that the court should consider the UCC-3 statements because the termination statements are central to Wacker's claims. (ECF No. 28 at 9 fn. 1, 15 fn. 5.) In footnotes Action Rentals cites to *In Re Residential Capital LLC*, 497 B.R. 403 (Bankr. S.D.N.Y. 2013). (*Id.*) In that case a group of noteholders sought declaratory judgments that purported lien releases on collateral were invalid under the New York Uniform Commercial Code. *In re Residential Cap., LLC*, 497 B.R. 403, 409 (Bankr. S.D.N.Y. 2013). The court determined it could look to the contents of those releases and UCC-3 filings on a motion to dismiss to determine whether the liens had been validly released because they were central to the noteholders' claims that the releases were invalid. *Id.* at 416-17.

Wacker argues that Action Rentals has not shown how the UCC-3 statements are central to Wacker's claims. (ECF No. 40 at 10.) Wacker points out that in *In re Residential Capital, LLC* the relevance of the UCC-3 filings was apparent because the claims surrounded whether the noteholders' security interests had been released. There is no such relevance here. (ECF No. 40 at 10.) The court agrees. Action Rentals is not asking the court to consider the UCC-3 statements to determine whether Wacker's security interests in collateral have been terminated; rather, it wants the court to consider them in determining whether the termination of those security interests means that Wacker has released all claims against Action Rentals. In its motion to dismiss, Action Rentals does not point to any authority stating that the filing of UCC-3 statements operates as a general release of claims.

In its reply Action Rentals makes various arguments as to how the Court may consider the UCC-3 statements without converting its motion into one for summary judgment. (ECF No. 41 at 9-10, 14-15.) But even if the court were to consider the UCC-3 statements, nothing supports Action Rentals' contention that they act as a complete bar to all of Wacker's claims. On this point Action Rentals references Florida law governing UCC termination statements (UCC § 9-513(c)(1) and Fla. Stat. § 679.513(3)(a) & (b)), arguing the plain language indicates that the UCC-3 termination statements prove Action Rentals has satisfied all obligations to Wacker. (ECF No. 41 at 11.) Even if that is the case, it is unclear whether the UCC-3 statements Wacker filed covered *all* obligations

8
Case 2:22-cv-00777-WED   Filed 12/14/23   Page 8 of 16   Document 44

owed by Action Rentals. That is, even if filing a UCC-3 statement automatically constitutes satisfaction of an obligation, nothing indicates that the UCC-3 statements filed here prove that all obligations owed by Action Rentals were satisfied. In its answer Wacker does admit filing certain UCC-3 statements, but says it lacks information sufficient to admit or deny whether it filed "all necessary" UCC-3 termination statements related to Action Rentals' obligations. (ECF No. 24 at ¶ 32.)

Ultimately, Action Rentals fails to support its contention that the filing of the UCC-3 statements at issue (and satisfaction of obligations covered by those statements) released any or all of Wacker's claims against Action Rentals. Such perfunctory and undeveloped arguments are waived, especially when they are unsupported by legal authority. *See Krell v. Saul*, 931 F.3d 582, 588 n.1 (7th Cir. 2019) (citing *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). As such, the court will not consider the UCC-3 termination statements in deciding the motion to dismiss.

### 3.2. Unjust Enrichment (Count I)

Action Rentals argues that Wacker's unjust enrichment counterclaim should be dismissed. Both parties analyze the claim under Wisconsin law. (ECF Nos. 28 at 4-8, 40 at 5-11.) Action Rentals offers two main arguments in support of the motion to dismiss. First, Wacker has failed to allege facts sufficient to support a claim for unjust enrichment. (ECF No. 28 at 5.) Second, Wacker is precluded from asserting a quasi-contractual claim against Action Rentals because it is incompatible with Wacker's

position that the payoff letter and mutual release contained therein (the "Payoff Letter") is a valid and enforceable agreement. (*Id.*)

In Wisconsin an unjust enrichment claim has three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so. *Hayes v. Wisconsin & S. R.R., LLC*, 514 F. Supp. 3d 1055, 1061-62 (E.D. Wis. 2021). Action Rentals contends that Wacker has failed to state a claim for unjust enrichment because it simply recites the bare elements of an unjust enrichment claim and incorporates allegations related to an alleged contract (the Payoff Letter). (ECF No. 28 at 5.)

Wacker makes clear that brings its unjust enrichment claim in the alternative to its position that the Payoff Letter is a valid and enforceable agreement. (ECF No. 28 at ¶ 50.) Wacker's unjust enrichment claim states that Wacker (1) conferred a benefit upon Action Rentals by offering to discount $291,920.15 from the $29,500,233.86 that Action Rentals owed Wacker in exchange for Action Rentals' release of Wacker's obligations to Action Rentals; (2) that Action Rentals accepted the discount by paying the discounted total owed to Wacker ($29,208,313.71); and (3) that Action Rentals' retention of the discount is inequitable because it was premised upon Action Rentals' release of obligations owed by Wacker, which Action Rentals now claims has no effect. (ECF No. 28 at ¶¶ 51-53.) Such allegations are sufficient to state a claim for unjust enrichment.

10

Action Rentals argues that Wacker cannot maintain a claim for unjust enrichment while taking the position that the Payoff Letter is a valid and enforceable contract. (ECF No. 28 at 5.) Action Rentals cites to *Cont'l Cas. Co. v. Wisconsin Patients Comp. Fund*, 164 Wis. 2d 110, 118 473 N.W.2d 584, 587 (Wis. Ct. App. 1991), for the proposition that, if a contract covers the subject of a claim, the doctrine of unjust enrichment does not apply. (*Id.* at 5-6.)

While it is true that a party "cannot recover simultaneously on both a contract and an unjust enrichment theory, such theories can be plead in the alternative." *U.S. ex re. Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 859 (E.D. Wis. 2011). *See also* Fed. R. Civ. P. 8(d)(3) (permitting the pleading of inconsistent claims or defenses). Action Rentals contends that Wacker Neuson's claim for unjust enrichment suffers from the same flaw that led the court to dismiss Action Rentals' own unjust enrichment claims when deciding Wacker's motion to dismiss. In its decision dismissing Action Rentals' unjust enrichment claim, the issue was whether Action Rentals could simultaneously maintain breach of contract claims pertaining to the parties' Distributor Contract and the Machine Fire Rentals Charges Agreement as well as claims for unjust enrichment associated with those agreements. The court cited *U.S. ex rel. Roach Concrete, Inc. v. Veteran Pac., JV*, which states:

> Where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from

pleading in the alternative claims that are legally incompatible with the contract claim.

787 F. Supp. 2d at 859. Because Action Rentals had not alleged any facts to support an inference that the contracts on which its breach of contract claims were based might be invalid or unenforceable, the court found that Action Rentals could not also pursue a claim for unjust enrichment. (ECF No. 21 at 16-17.) Action Rentals argues that this same analysis bars Wacker from maintaining its unjust enrichment claim in the alternative to its position regarding the Payoff Letter's validity.

The difference between Action Rentals' unjust enrichment claims and the unjust enrichment claim posited by Wacker is that Wacker's claim *does* allege facts upon which it could at least be inferred that the contract at issue (the Payoff Letter) might be invalid. Although Wacker alleges that the Payoff Letter is a binding contract, Action Rentals contends it is not. If it is not, then Wacker can alternatively sue for unjust enrichment. In contrast, Action Rentals never alleged any facts upon which the court could conclude that the contracts at issue in its breach of contract claims (the Distributor Contract (Count III) and the Machine Fire Rental Charges Agreement (count VII)) might be invalid.

Specifically, Wacker's unjust enrichment counterclaim alleges that, despite Action Rentals' acceptance of the benefits of the Payoff Letter (the one-percent discount on Action Rentals' obligations to Wacker) and payment of the discounted amount, Action Rentals now claims it never actually accepted the terms of the Payoff Letter—that is,

that it never released its claims against Wacker—because it did not sign the Payoff Letter. (ECF No. 24 at ¶ 5.) Wacker further alleges that Action Rentals has not paid the full amount owed despite its assertion that it did not release its claims against Wacker. (*Id.* at ¶ 48.) Thus, Wacker's unjust enrichment counterclaim does allege facts upon which it could at least be inferred that the contract on which Wacker's defense to Action Rentals' claims is based (the Payoff Letter) might be invalid.

Action Rentals argues that the factual allegations Wacker relies on regarding the Payoff Letter's invalidity are not Wacker's allegations but rather Action Rentals' allegations. (ECF No. 41 at 6.) But for Wacker's unjust enrichment claim to proceed in the alternative to its defense that the Payoff Letter is a valid and binding contract, there simply needs to be a factual basis for inferring the invalidity of the contract. *See Joe Panos, Inc. v. Panagiotopoulus*, No. 22-CV-656, 2022 WL 20690783 *6 (E.D. Wis. Dec. 21, 2022) (allowing defendant to pursue a promissory estoppel counterclaim in the alternative to its breach of contract counterclaim where plaintiff disputed the validity of the alleged contract).

Action Rentals also argues that Wacker is precluded from bringing an unjust enrichment claim because it has incorporated allegations regarding the existence of a valid contract (the Payoff Letter) into its unjust enrichment claim. (ECF No. 28 at 7.) But that argument puts form over function. In *Joe Panos, Inc. v. Panagiotopoulous*, the court allowed the defendant's promissory estoppel claim to proceed in the alternative to its

13
Case 2:22-cv-00777-WED   Filed 12/14/23   Page 13 of 16   Document 44

breach of contract claim even though the defendant had incorporated allegations regarding the existence of a valid contract into its claim for promissory estoppel. No. 22-CV-656, 2022 WL 20690783 *6. The court had already determined that there was a factual basis supporting the promissory estoppel claim because the plaintiff actively disputed the validity of the contract between the parties. *Id.* As a result, the court found that dismissing the claim solely based on its incorporation of allegations regarding the contract's validity into the quasi-contractual claims would only result in a do-over for the defendant: "[i]t hardly seems like a good use of time and resources to dismiss BG's [promissory estoppel] claim only to allow it to re-plead and remove the 'incorporated by reference' allegation…." *Id.*

### 3.3. Breach of Contract Claims & Breach of Guaranty Claim (Counts II, III, and IV)

In the alternative to its position that the Payoff Letter is a valid, enforceable agreement under which both Action Rentals and Wacker released their claims against one another (ECF No. 24 at ¶¶ 55, 60), Wacker brings two breach of contract claims against Action Rentals. In the first (count II), Wacker alleges that Action Rentals breached the agreement to purchase telehandlers from Wacker. (ECF No. 24 at ¶¶ 56-57.) In the second (count III), Wacker alleges that Action Rentals breached the Distributor Agreement by using third-party aftermarket parts when performing warranty service on alternators when it was required to use Wacker parts. (*Id.* at ¶¶ 61-63.)

Wacker also brings an alternative third-party breach of guaranty claim against Ramos (count IV) in which Wacker alleges that Ramos breached the Individual Credit Guaranties and guaranties incorporated into the Equipment Finance Agreements by failing to pay the obligations of Action Rentals. (*Id.* at ¶¶ 66-68.)

Similar to its argument with respect to Wacker's unjust enrichment claim, Action Rentals contends that Wacker is precluded from pleading breach of contract and breach of guaranty claims in the alternative because those claims are incompatible with Wacker's assertions regarding the Payoff Letter's validity. (ECF No. 28 at 10.) Wacker responds that it is allowed to bring inconsistent claims in the alternative if there is a basis on which the court may infer the Payoff Letter's invalidity. (ECF No. 40 at 12.)

As previously stated, parties are allowed to bring inconsistent claims and defenses. *See* Fed. R. Civ. P. 8(d)(3). Further, as discussed above, a factual basis exists on which the court could conclude that the Payoff Letter is invalid. (ECF No. 24 at ¶¶ 54, 59, 65.) While Wacker argues that the Payoff Letter is a valid agreement, nothing precludes Wacker from simultaneously bringing alternative claims for breaches of the parties' underlying contracts and guaranties in the event the Payoff Letter is found to be invalid, as Action Rentals alleges.

4. **Conclusion**

For the reasons stated above, the court will deny Action's motion to dismiss with respect to all four of Wacker Neuson's claims.

15
Case 2:22-cv-00777-WED   Filed 12/14/23   Page 15 of 16   Document 44

**IT IS THEREFORE ORDERED** that Action Rentals Holdings, Action Rentals Holdings, LLC, and Bruno E. Ramos' motion to dismiss is **DENIED**.

Dated at Milwaukee, Wisconsin this 14th day of December, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge